# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

STEVE M. HAYWOOD,

      Petitioner,

v.                                   CASE NO. 8:07-CV-807-T-27MAP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

Petitioner, an inmate of the Florida penal system proceeding *pro se,* initiated this action by filing a

Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("petition") (Dkt. 1), and a memorandum

of law in support of the petition (Dkt. 2). Petitioner challenges his conviction for robbery entered in 2004

by the Sixth Judicial Circuit Court, Pinellas County, Florida. Respondent filed a response to the petition

(Dkt. 23). Petitioner filed a reply to the response (Dkt. 27).

The matter is now before the Court for consideration on the merits of the petition. A recitation of the

procedural history of Petitioner's criminal conviction is not necessary to the resolution of his habeas claims

because Respondent does not dispute the timeliness of the petition. An evidentiary hearing is not required

for the disposition of this matter. Rules Governing Section 2254 Cases 8(a) (2010).

### Standards of Review

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act

of 1996 ("AEDPA"), this Court's review of the state court's factual findings must be highly deferential. Such

findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). It is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." *Id. Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

**Procedural default**

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell* , 353 F.3d 880, 891 (11th Cir. 2003)("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Duncan v. Henry*, 513 U.S. 364 (1995)("[E]xhaustion of state remedies requires that the state prisoner 'fairly present' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]'") (citation omitted).

Under the procedural default doctrine, "if the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson*

2

*v. Campbell*, 353 F.3d at 891 (quoting *Judd v. Haley*, 250 F.3d at 1313).

Pre-AEDPA decisions from the Supreme Court establish the framework governing procedural default in federal habeas cases. A procedural default will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson v. Campbell*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995).

To show "prejudice," the petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). The petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Henderson v. Campbell*, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986) (explaining a "fundamental miscarriage of justice" occurs "in an

extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'to be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining "given the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted). The *Schlup* Court stated the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Ward v. Cain*, 53 F. 3d 106, 108 (5th Cir. 1995)(denying certificate of probable cause)(footnote omitted).

**Ineffective assistance of counsel**

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland's* two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

## Discussion

### Ground One

In Ground One, Petitioner complains that his trial attorney was ineffective in failing to move to

4

dismiss the charging document (Information) as defective. In support of his claim, Petitioner argues that the evidence at trial did not support a robbery charge. Instead, he argues, the evidence only supported a charge of shoplifting, resisting a merchant's agent, or attempted robbery.

To the extent Petitioner asserts trial counsel was ineffective in failing to attack the Information as fatally defective, Petitioner fails to identify any defect in the charging Information. Instead, Petitioner asserts that the evidence presented at trial was insufficient to support his conviction for robbery. Because Petitioner fails to identify any defect in the Information, he cannot show that counsel was ineffective in failing to challenge the Information as defective.[1]

To the extent Petitioner asserts counsel was ineffective in failing to make a motion for judgment of acquittal challenging the sufficiency of the evidence, the claim is without merit. The state court denied this claim as follows:

> Defendant claims that counsel was ineffective for failing to adequately move for a judgment of acquittal and for failing to move to vacate the judgment and sentence and move for a new trial. The court finds Defendant's argument unpersuasive. In order for the court to find that counsel was ineffective, (1) counsel's performance must be deficient; and (2) defendant must be prejudiced by counsel's deficient performance. *See Strickland v. Washington*, 104 S. Ct. 2052 (1984). In the instant case, defense counsel prudently moved for a judgment of acquittal and presented argument as to the reasons the State failed to make a primae facie case of robbery. *See Trial Transcript pgs. 79-80.* The trial court denied the motion for judgment of acquittal, stating that it would be a question for the jury. Furthermore, after Defense rested, Defense counsel renewed motion for judgment of acquittal. *See Trial Transcript pg. 82.* Therefore, the court finds that counsel's performance

---

[1]To the extent Petitioner may be asserting a substantive claim that the Information was defective, the Court agrees with Respondent that the claim is procedurally defaulted (See Dkt. 23 at pg. 7). The state court concluded that Petitioner's claim was not cognizable in a Rule 3.850 motion because it could and should have been raised on direct appeal (Respondent's Ex. 11 at pg. 2). When a state court has applied a state procedural bar to a claim, that claim is similarly barred from federal habeas review. *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991). Petitioner has not shown cause or prejudice for his default, or that a miscarriage of justice would result if the error is not considered. Moreover, the claim lacks merit because Petitioner fails to identify any defect in the Information. Further, in federal court, whether an offense is properly alleged in an indictment or information is not a proper subject for habeas corpus review unless the indictment or information is so fatally defective as to deprive the convicting court of jurisdiction. *De Benedictis v. Wainwright*, 674 F.2d 841, 842 (11th Cir. 1982). The Information was not so defective as to deprive Petitioner of any federal constitutional right because the Information alleged sufficient facts to meet constitutional requirements. *Id.*; (Respondent's Ex. 1, Vol. I at pg. 11).

was not deficient as to this matter.

(Respondent's Ex. 11 at pg. 3).

The state court's denial of this claim is objectively reasonable. Trial counsel's performance was not deficient because he moved for a judgment of acquittal on the basis that the State's evidence did not establish robbery, but only either resisting a merchant or petit theft (Respondent's Ex. 1, Vol. II at pgs. 79-80). Moreover, there was no prejudice to Petitioner in light of the overwhelming evidence of his guilt.

Petitioner has not shown that counsel acted deficiently with regard to this matter or that he sustained prejudice. Thus, Petitioner has not demonstrated that the state court's decision was either "contrary to" or an "unreasonable application of" clearly established federal law. Nor has he shown that the state court made an unreasonable determination of the facts in light of the evidence presented. Accordingly, Ground One does not warrant federal habeas corpus relief.

**Ground Two**

In Ground Two, Petitioner complains trial counsel was ineffective in failing to use the department store's security videotape to impeach a State witness, Joel Joseph ("Joseph"). Specifically, Petitioner asserts counsel was ineffective in failing to use an "unedited" version of the videotape to impeach Joseph's testimony that he had shown Petitioner his identification badge and identified himself as "store security" before grabbing Petitioner's arm and pushing him up against a wall. Petitioner argues that the "unedited" videotape would have discredited Joseph's testimony, and established Petitioner did not commit a robbery.

Petitioner raised this claim as Ground Two in his state Rule 3.850 motion (Respondent's Ex. 10 at pgs. 13-15). The state court denied this claim as follows:

> Defendant claims that counsel was ineffective because counsel did not object to the edited version of the video tape being used at trial. Instead, Defendant contends that the video should have been played in its entirety in order to impeach State's witness, Joel Joseph.

6

The court finds that Defendant's claim has no merit. A review of pages 20-21 of the trial transcript reveals that the State explained the following to the court and defense counsel:

Mr. Marr: I just want to let the Court know and defense counsel know one thing procedurally. What I did today was I have the video which was taken into evidence on – that shows the shoplifting, and the way the tape worked was once it started and the officer left his control room, he went downstairs, the tape automatically then rewound to the very beginning of the two-hour tape.

So what I did was tape that portion showing the defendant a moment before he came in the store and then pause it, went back, rewound it and then added in the tape where he was then leaving the store. So I just wanted to let Mr. Clapp know that.

I'm going to introduce both anyway, but I wanted to introduce both anyway, but I wanted to explain it to you all just to make sure you know what I did.

The court finds that the State simply copied the Defendant's act on one tape instead of having to view the full 2 hour tape that contained footage unrelated to the Defendant. Therefore, the Defendant has failed to establish the necessary prejudice required by *Strickland*. Thus, Defendant's claim is denied.

(Respondent's Ex. 11 at pgs. 2-3).

The state court's denial of this claim is objectively reasonable. In his reply, Petitioner asserts "[t]he unedited VHS tape that was available to defense counsel for 10 months, would have clearly shown that once Petitioner exited the store, Mr. Joseph physically ambushed the Petitioner." (Dkt. 27 at pg. 7). Petitioner does not, however, assert that he actually watched the unedited videotape, and that the videotape showed that Joseph did not present his identification badge and identify himself to Petitioner as "store security." [2]

Petitioner has made conclusory allegations concerning facts in the case. He does not point to some portion of the record to support his allegation that the unedited videotape shows that Joseph did not identify himself as store security before apprehending him outside the store. In fact, the record belies Petitioner's allegation. In his state Rule 3.850 motion, Petitioner asserted in pertinent part that "[t]here is - no video

---

[2]Petitioner does assert that despite counsel possessing the unedited videotape "for 10 months...defense counsel failed to explore this VHS tape." (Dkt. 27. at pg. 8).

footage - of any act - action - or word - outside of Beal's [sic] Department Store[.]" (Respondent's Ex. 10 at pg. 14). Therefore, in state court Petitioner asserted that there was no video footage of the events which took place outside the store. He also speculated that "the un-edited version [c]ould have...proved Mr. Joseph, not, [sic] to have been telling the whole truth..." (Id.). Petitioner did not, however, allege that he viewed the unedited videotape, and that it showed Joseph did not identify himself before apprehending Petitioner. Nor does he make that allegation in this federal habeas action.

Petitioner's allegation is vague and conclusory and inadequate as a matter of law to raise a cognizable claim of ineffective assistance of counsel. *See United States v. Cranshaw*, 817 F. Supp. 723, 728 (N.D. Ill. 1993), *aff'd without opinion*, 23 F.3d 410 (7th Cir. 1994), *cert. denied*, 513 U.S. 953 (1994). He must provide evidence, not mere conclusory allegations that counsel overlooked exculpatory information. *Barkauskas v. Lane*, 946 F.2d 1292, 1295 (7th Cir. 1991). Petitioner's bald assertions are inadequate to overcome the presumption that counsel acted reasonably. *Matura v. United States*, 875 F. Supp. 235, 237 (S.D.N.Y. 1995). Accordingly, Petitioner fails to demonstrate that his counsel's performance was deficient.

Furthermore, in his Rule 3.850 motion, Petitioner admitted that "[y]es - after realizing that Mr. Joseph was a store security - he did resist his being - detained." (Respondent's Ex. 10 at pg. 14). Therefore, even if the unedited videotape showed that Joseph did not identify himself before grabbing Petitioner's arm, Petitioner nonetheless admits that he struggled with/resisted Joseph after he knew Joseph was the store's security guard. In Florida, once a defendant successfully commits a petit theft, shoplifting with no use of force, and departs the store, he can be charged with robbery because he struggles with a security guard who is trying to take him back to the store. *Lemus v. State*, 641 So. 2d 177, 178 (Fla. 5th DCA 1994) (finding force used to resist a security guard was sufficient to support a conviction for robbery, even though the defendant used no force to take the items from the store). Therefore, because Petitioner admitted that he

8

resisted Joseph after he knew that Joseph was a security guard, he cannot show that he was prejudiced as a result of counsel's failure to attempt to impeach Joseph with the unedited videotape.

Petitioner has not shown that counsel acted deficiently with regard to this matter or that he sustained prejudice. Thus, Petitioner has not demonstrated that the state court's decision was either "contrary to" or an "unreasonable application of" clearly established federal law. Accordingly, Ground Two does not warrant federal habeas corpus relief.

**Ground Three**

In Ground Three, Petitioner complains that he was denied due process when the state trial court denied his first two Rule 3.850 claims without an evidentiary hearing, and when the state district court of appeal affirmed the denial of the claims. He argues that because his claims were legally sufficient, he was entitled to an evidentiary hearing on the claims.

Petitioner's claim is wholly without merit because "a state court's failure to conduct an evidentiary hearing on a post-conviction motion does not constitute a cognizable claim for habeas relief." *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009) (citations omitted). Accordingly, Ground Three does not warrant federal habeas corpus relief.

**Ground Four**

In Ground Four, Petitioner complains that appellate counsel was ineffective in failing to raise on direct appeal the claim that the trial court erred in denying Petitioner's motion for judgment of acquittal because the State failed to present sufficient evidence that Petitioner committed robbery. Petitioner asserts that robbery is the taking of property of another by force. He argues that the evidence presented at trial showed that he did not use any force when he took the merchandise from the department store. He asserts that he used force only outside the department store to resist being detained by a security guard who

9

witnessed Petitioner stealing the merchandise. He opines that had appellate counsel raised the issue on direct appeal, the appellate court would have vacated the robbery conviction, and he would have been convicted only of a lesser included offense such as attempted robbery, shoplifting, or resisting a merchant.

A defendant has the right to effective counsel on appeal. *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984). "The standards applicable to [a petitioner's] claims of ineffectiveness against trial counsel apply equally to the charges leveled against his appellate lawyer. To prevail, [a petitioner] must demonstrate both that his appellate counsel's performance fell below reasonable professional standards and that he was prejudiced by his attorney's substandard performance." *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) (citation omitted). "A [petitioner] can establish ineffective assistance of appellate counsel by showing: (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal." *Shere v. Sec'y, Dep't of Corr.*, 537 F.3d 1304, 1310 (11th Cir. 2008) (citations omitted). Absent a showing "regarding the effect, if any, that a different [appellate] brief would have had on the outcome of proceedings," under *Strickland*, there is no ineffective assistance of appellate counsel. *Johnson*, 256 F.3d at 1188.

In state court, Petitioner raised this claim in his Petition for a Writ of Habeas Corpus to the district court of appeal (Respondent's Ex. 6). The court denied the petition without opinion (Respondent's Ex. 8); *Haywood v. State*, 915 So. 2d 1207 (Fla. 2d DCA 2005) [table].

In *Hargrove v. Solomon*, 227 Fed. Appx. 806 (11th Cir. 2007) (unpublished opinion), the Eleventh Circuit Court of Appeals stated:

> We have rejected the argument that a state court must explain its rationale in order for a claim to have been "adjudicated on the merits," holding that a claim is entitled to deference under § 2254(d) provided that the issue was raised and the court rendered a decision that was not contrary to or an unreasonable application of federal law. *See Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254-55 (11th Cir. 2002). Moreover, although whether

appellate counsel was constitutionally ineffective is a question of federal law, when the answer to the question turns on whether counsel should have raised issues of state law (in the instant case, on appeal), § 2254(d) requires that we defer to the state court's decision regarding its own laws. *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (superceded by statute on other grounds).

*Id.* at 808.

The state court's denial of Petitioner's ineffective assistance of appellate counsel claim resolves that, as a matter of state law, the State presented sufficient evidence to withstand a motion for judgment of acquittal under state law. *Cf. Hargrove*, 227 Fed. Appx. at 808-09 ("The state court's decision - that Petitioner was not denied the effective assistance of appellate counsel - resolved a question of what jury instructions were proper under state law."). This Court must defer to the state court's decision regarding the sufficiency of the evidence to withstand the acquittal motion. Thus, because under state law there was sufficient evidence to withstand the acquittal motion, Petitioner cannot show appellate counsel's performance was deficient.

To the extent Petitioner argues appellate counsel was ineffective in failing to raise on direct appeal a claim of insufficiency of the evidence, the claim is without merit. "The Supreme Court has held, in the context of a state prisoner's habeas challenge to the sufficiency of the evidence to support her conviction, that the 'critical inquiry' is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Carlisle v. Conway*, 276 Fed. Appx. 893, 895 (11th Cir. 2008)(quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), *overruled on other grounds by Schlup v. Delo*, 513 U.S. 298 (1995)). The trial court instructed the jury, in pertinent part, that:

> Let me give you the law as it relates to robbery. To prove the crime of robbery, the State must prove the following four elements beyond a reasonable doubt:

11

Element number one, Steve Haywood took the merchandise from the person or custody of Joel Joseph.

Element two, force, violence, assault or putting in fear was used in the course of the taking.

Element three, the property taken was of some value.

Element four, the taking was with the intent to permanently or temporarily deprive Bealls Outlet of their right to the property or any benefit from it or to appropriate the property of Bealls Outlet to his, the defendant's, own use, or to the use of any person not entitled to it.

Quote, in the course of the taking, end quote, means that the act occurred prior to, contemporaneous with, or subsequent to the taking of the property and that the act and the taking of the property constitute a continuous series of acts or events.

In order for the taking of property to be robbery, it is not necessary that the person robbed be the actual owner of the property. It is sufficient if the victim has custody of the property at the time of the offense.

The taking must be by the use of force or violence or by assault so as to overcome the resistance of the victim, or by putting the victim in fear so that the victim does not resist. The law does not require that the victim of robbery resist to any particular extent or that the victim offer any actual physical resistance if the circumstances are such that the victim is placed in fear of death or great bodily harm if he or she does resist. But unless prevented by fear there might be some resistance to make the taking one by force or violence. I'm striking out the last paragraph.

MR. CLAPP: No objection.

THE COURT: In order for a taking by force, violence or putting in fear to be robbery, it is not necessary that the taking be from the person of the victim. It is sufficient if the property taken is under the actual control of the victim so that it cannot be taken without the use of force, violence or intimidation directed against the victim.

(Respondent's Ex. 1, Vol. II at pgs. 109-11).

There was sufficient evidence to establish the elements of robbery. Joseph, a loss prevention agent for the department store, testified that he observed Petitioner in the fitting room putting on several pairs of the department store's boxer shorts and not taking them off. He then exited the store and watched as

Petitioner exited the store without having paid for the boxer shorts. Joseph noticed a bulge in Petitioner's pants as he exited the store. Joseph then pulled out his identification card and identified himself as "store security" to Petitioner. Joseph then grabbed Petitioner's arms behind his back and put him up against a wall. Petitioner then began to struggle with Joseph, broke free of his grasp, and began swinging both of his fists at Joseph. Joseph ducked to avoid being punched. Joseph then grabbed Petitioner by one of his arms. They went down to the ground and were essentially wrestling on the ground as Joseph attempted to restrain Petitioner while Petitioner resisted. Joseph managed to restrain Petitioner until the police arrived. Petitioner was handcuffed and escorted back into the store. They took him into an office where Petitioner removed his pants and took off the department store's boxer shorts (Respondent's Ex. 1, Vol. II at pgs. 24-53).

Petitioner does not dispute that the State established elements one, three, and four of robbery. He does, however, dispute that the State established element two, i.e., that "force, violence, assault or putting in fear was used in the course of the taking." He argues that the force he used on Joseph was not used "in the course of the taking" because the force was not used in order to take the merchandise. Instead, he argues, he used force to avoid being detained by Joseph after Joseph grabbed him.

The state court instructed the jury that "in the course of the taking...means that the act occurred...subsequent to the taking of the property and that the act and the taking of the property constitute a continuous series of acts or events." (Respondent's Ex. 1, Vol. II at pgs. 109-10). Even though Petitioner did not use any force in the department store, he did use force to resist Joseph just after he exited the store. In Florida, robbery can be proven by evidence that the defendant used force against the victim after the taking has been completed. *See, e.g., Lemus*, 641 So.2d 177 (Fla. 5th DCA 1994) (finding force used to resist a security guard was sufficient to support a conviction for robbery, even though the defendant used no force to take the items from the store). Petitioner's taking the property and subsequent struggle with

13

Joseph after he exited the store constitute "a continuous series of acts or events." Thus, there was sufficient evidence of robbery. Accordingly, Petitioner does not show appellate counsel was ineffective in failing to raise a claim of insufficiency of the evidence on direct appeal.

Petitioner has not met his burden of demonstrating that the state court's denial of these claims was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court within the meaning of 28 U.S.C. § 2254(d). Accordingly, Ground Four does not warrant relief.

### Conclusion

For the foregoing reasons, the Court finds that Petitioner is not entitled to federal habeas relief.

ACCORDINGLY, the Court **ORDERS** that:

1. The Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 1).

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*,

14

537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**DONE and ORDERED** in Tampa, Florida, on ____*MAY 24*____, 2010.

JAMES D. WHITTEMORE
United States District Judge

SA:sfc
Copy to: Petitioner *pro se*
       Counsel of Record

15